Filed 12/5/24  King City Entertainment v. Town & Country Investments CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| KING CITY ENTERTAINMENT et al., | |
| Plaintiffs, Cross-defendants and Appellants, | E080963 |
| | (Super.Ct.No. RIC1817866) |
| v. | OPINION |
| TOWN & COUNTRY INVESTMENTS, LP et al., | |
| Defendants, Cross-complainants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.

Affirmed.

Law Offices of Andrew D. Weiss and Andrew D. Weiss, for Plaintiffs, Cross-defendants and Appellants.

Vivoli Saccuzzo and Jason P. Saccuzzo, for Defendants, Cross-complainants and Respondents.

1

In this commercial lease dispute, Minerva Munoz and her corporation, King City Entertainment (King City), appeal from a judgment against them and in favor of their former landlord, respondents Town & Country Investments, LP (Landlord). In December 2014, Munoz and her business partner, Joe Baker, signed a seven-year lease with Landlord for a commercial property in Norco for the purpose of opening a restaurant. Munoz also executed a personal guaranty of the lease. Munoz and Baker signed the lease on behalf of their corporations, and Munoz signed the guaranty in her individual capacity.

The partnership venture did not go as planned, and Munoz and Baker had a falling out before the restaurant opened. Munoz and Baker entered into a settlement agreement under which Baker promised Munoz that he would return the money she had invested in the restaurant and would "make arrangements with [] Landlord" to release King City from the lease and release Munoz from the guaranty. Baker did neither, and Munoz was not released from either agreement. Meanwhile, the lease was still in effect, and neither Baker's corporation nor King City was paying rent. Landlord ultimately filed a successful unlawful detainer action and relet the property in June 2018.

In August 2018, Munoz and King City filed this lawsuit against Landlord, alleging fraudulent concealment and seeking a declaration of no liability under the lease or the guaranty. Munoz alleged that Landlord concealed from her the fact that rent was not being paid as part of a scheme to increase her liability under the lease. Landlord filed a cross-complaint against King City and Munoz for breach of the lease and breach of the guaranty, respectively.

2

After a bench trial and Landlord's two successful motions for summary judgment, the court dismissed Munoz's fraud claim and entered judgment in favor of Landlord on its breach of contract claims. On appeal, Munoz argues that the trial court made several errors in its trial and summary judgment rulings. We conclude that each argument lacks merit, and we therefore affirm.

## BACKGROUND

I.      *The partnership agreement*

Before they became business partners, Munoz and Baker had known each other for many years through their involvement in a youth football organization in Norco. The idea for the restaurant arose after Munoz mentioned to Baker's wife, Michelle, that she (Munoz) had recently received an inheritance of roughly $260,000. They discussed the possibility of opening a daycare center, but shortly thereafter the Bakers approached Munoz with the idea of opening a bar and grill called Cowboy Joe's Sports Saloon instead. At trial, Munoz testified that Baker "claimed to be a licensed contractor and he said that he could build it out. And he also said he had restaurant experience, so he could actually run the restaurant once it opened."

Munoz agreed to go into the restaurant business with the Bakers and to form her own corporation for that purpose. At the time, Munoz owned and operated two vehicle-related companies—a used car dealership and a vehicle registration business. After consulting with the bookkeeper for those companies, Munoz formed King City, a

corporation of which she was the sole officer, employee, and shareholder. The Bakers formed a corporation called Diamond B Ranch Enterprises, Inc ("Diamond").

On December 3, 2014, Munoz and Baker signed a partnership agreement on behalf of their corporations. The agreement stated: "Diamond B Ranch Enterprises, Inc (Joe and Michelle Baker) and King City Entertainment Inc (Minerva Munoz) are entering into a partnership agreement to create a sports bar/grill as 50/50 partnership in the restaurant. Minerva Munoz will be providing the financial costs for the construction and startup costs, while Joe Baker will manage the construction project and business once it is opened."

II.     *The lease and the guaranty*

Also on December 3, 2014, Munoz and Baker signed on behalf of their corporations a seven-year lease with Landlord for a 5,300 square-foot commercial space in a shopping center in Norco. The lease identified the tenant as King City and Diamond "dba Cowboy Joe's Sports Saloon."

The lease required Cowboy Joe's to pay an initial security deposit of $10,000 plus monthly rent, which consisted of base rent plus common area operating expenses (calculated at 30 cents per square foot). Under the lease's graduated rent schedule, base rent increased in year three and then increased by 3 percent annually each year thereafter.

Section 2 of the lease required Cowboy Joe's to pay rent on the first day of each calendar month "without notice or demand." Section 27 provided that King City and Diamond were jointly and severally liable for all of the tenant's obligations under the

4

lease. Additionally, the lease contained an inducement provision that provided for a "tenant improvement allowance." Section 7 stated that "[i]n lieu of an itemized list of improvements that the Landlord will complete in conjunction with tenant's improvements, the Landlord will contribute $55,000 towards the necessary interior improvements," and payment of that allowance "will be due within 45 days of tenant receiving their certificate of occupancy."

Section 33 gave Landlord the right to defer any obligation under the lease without waiving its right to performance. That provision states that Landlord's "failure to exercise its rights with respect to a breach of any term . . . shall not be a waiver of such term." Section 13 provided that, in the event of Cowboy Joe's failure to pay rent, Landlord was authorized under Civil Code section 1951.4 to allow the tenant to remain in possession of the property for the term of the lease and to let unpaid rent accrue.

Finally, the lease required that any modifications of its provisions must be in writing.

In addition to signing the lease on behalf of King City, Munoz also signed a personal guaranty of the lease. The guaranty provided that Munoz "absolutely and unconditionally guarantees" all rent and performance obligations under the lease and that such guarantee was "independent of" Cowboy Joe's obligations under the lease.[1]

Section 5.8 of the guaranty contained a list of defenses that Munoz agreed to waive, including any defense based on any "lack of . . . notice" of Cowboy Joe's

---

[1] Baker also signed a personal guaranty of the lease, but he has since declared bankruptcy and is not a party to the underlying lawsuit or this appeal.

5

"nonperformance" under the lease. Section 7.2 stated that Munoz had adequate means of obtaining information about Cowboy Joe's "financial condition, operations, properties and prospects." Like the lease, the guaranty required that any modifications of its provisions must be in writing.

At trial, Munoz acknowledged that she had met with the leasing agent, David Neault, in person before signing both agreements and that they discussed the guaranty. She admitted that she was familiar with general contract principles and personal guarantees from her experience operating a car dealership.

III.    *The settlement agreement between Munoz and Baker*

Less than a year into the partnership venture, Munoz and Baker had a falling out over the progress of construction at the restaurant and over Baker's management of Munoz's investment money. According to Munoz's trial testimony, sometime around April 2015 she heard that the city had "red tagged" construction at Cowboy Joe's over permitting issues. She began to have concerns about the partnership, and she scheduled a meeting with Baker to find out how he had been spending her investment. When Baker arrived, he told her that all of his receipts "flew out the window" of his truck on his drive over. Munoz decided that she could no longer trust Baker, so she hired Andrew Weiss (the same attorney who represented her at trial and in this appeal) to advise her on how to proceed. Munoz provided Weiss with copies of the lease and the guaranty, and Weiss drafted a confidential settlement agreement designed to extricate Munoz from her partnership with the Bakers.

6

That agreement, which is entitled "settlement agreement and mutual release," states that it "involves the settlement of a business dispute" between Munoz and King City, on the one hand, and the Bakers and Diamond, on the other. Under the terms of the agreement, the Bakers agreed (1) to refund Munoz the $263,213.09 that she had invested in the Cowboy Joe's venture up to that point and (2) to "make arrangements with the Landlord . . . to release King City Entertainment from the Lease and to release Minerva Munoz and her assets from the personal guaranty . . . both within three months of execution of this Agreement." In exchange for the Bakers' "full and timely compliance" with their obligations, Munoz agreed to release all claims to Cowboy Joe's stock. Also conditioned on the Bakers' performance of their obligations, the parties agreed to release each other from all claims "arising from or related to the Partnership, Cowboy Joe's Sports Saloon Inc." The parties signed the agreement in their individual capacities on August 24, 2015.

IV.    *Failure to pay rent and the unlawful detainer action*

Rent first became due under the lease in July 2015. On June 17, 2015, Neault sent a "Modification Letter" to Landlord asking it to agree that (1) the first month's base rent and the operating expenses for the first and second month would not be collected as they became due under the lease but would instead be "deduct[ed]" from the tenant improvement allowance and (2) the second month's base rent would not be collected as it became due under the lease but would instead be spread equally over the next 12 monthly

7

rent payments.  Landlord agreed to the modification and signed the letter on June 18.  Baker signed the letter on behalf of Diamond on June 17.

On August 28, 2015, Neault sent to Landlord a "2nd Modification Letter" memorializing Landlord's agreement to "deduct, if necessary" from the tenant improvement allowance the full month's rent (base rent plus operating expenses) for the third, fourth, and fifth month.  Baker signed the letter on behalf of "Minerva Munoz, or Assignee."

Cowboy Joe's failed to pay rent as it became due.  At trial, Landlord's owner, Michael Rahimi, testified that he deferred collecting rent under the lease because he could see that Baker was putting time and money into the property and he wanted to give Cowboy Joe's the opportunity to open.  Both Rahimi and Neault testified that all of their communications about rent were with Baker, because Baker was the more active partner.

Cowboy Joe's ultimately opened in December 2016.  From January through March 2017, Landlord received three rent checks from Cowboy Joe's, each for $4,505, which was about one-half of one month's base rent.  After that, Landlord did not receive any more rent payments from Cowboy Joe's.

On July 11, 2017, Landlord filed an unlawful detainer action against Baker and Munoz in their individual capacities and against Baker "dba King City Entertainment and Diamond B Ranch Ent. Inc. dba Cowboy Joe's Sports Saloon."  On October 23, 2017, Landlord obtained a stipulated judgment for $43,225.25 in rent and damages.  The following month, Landlord's counsel stipulated to set aside the judgment against Munoz,

8

because she had not been properly served with the complaint. In June 2018, Landlord relet the property to a new commercial tenant under a five-year lease, with first month's rent due in October 2018.

## V.     *Munoz's lawsuit and Landlord's cross-complaint*

In August 2018, Munoz filed this lawsuit on behalf of herself and King City, asserting claims against Landlord for declaratory relief and fraud. Munoz alleged that despite being informed that she was "no longer associated with" Baker and Cowboy Joe's, Landlord fraudulently concealed from her the fact that Baker was not paying rent, as well as the fact that she had not been released from her obligations under the lease and the guaranty. She alleged that by concealing those facts and allowing Baker to occupy the property for over two years, Landlord engaged in a scheme to "increas[e] her liability" under the lease and the guaranty. She sought a minimum of $300,000 in damages for the fraudulent concealment claim and a declaration that King City is not liable under the lease and that she is not liable under the guaranty.

Landlord filed a cross-complaint asserting a claim against King City for breach of the lease and a claim against Munoz for breach of the guaranty. Landlord also asserted a cause of action for the "common counts" of "account stated," "open book account," and "goods and services rendered," but it voluntarily dismissed those claims before trial. In her answer, Munoz asserted the affirmative defenses of failure to mitigate damages, unclean hands, breach of the implied covenant of good faith and fair dealing, and res judicata.

9

Because the case involved a mix of legal and equitable claims and defenses, the trial court bifurcated trial into two phases—a bench trial on the equitable issues (i.e., Munoz's declaratory relief claim and her equitable affirmative defenses) followed by a jury trial on the breach of contract claims.

VI.     *Landlord's first summary judgment motion*

Before the phase one trial, Landlord moved for summary judgment on Munoz's fraud claim. Landlord argued that the claim failed as a matter of law because Munoz could not prove at least two of the elements of fraudulent concealment: (1) that she was unaware of the allegedly concealed fact (i.e., the failure to pay rent) and (2) that Landlord had a duty to tell her that rent was not being paid. To show that Munoz knew that rent was not being paid, Landlord cited her admissions during discovery that Baker was her partner in the Cowboy Joe's venture and that Baker knew that Cowboy Joe's was delinquent on rent. Landlord argued that Baker's knowledge of unpaid rent was imputed to Munoz under principles of partnership law. To show that it did not owe Munoz a duty to inform her that rent was not being paid, Landlord cited the provision of the lease that required the tenant to pay rent "without notice or demand."

In her opposition, Munoz argued that Landlord misunderstood her fraud claim and that what she had in fact alleged was a claim for "aiding and abetting a breach of fiduciary duty." She argued that, as her business partner, Baker owed her a fiduciary duty to tell her that he was not paying rent and that Landlord "substantially assisted" Baker in breaching that duty by deferring the collection of rent.

10

The trial court concluded that Munoz had not asserted a cause of action for aiding and abetting a breach of fiduciary duty, because the complaint contained only one "brief mention" of the tort in the general allegation section. As to the fraud claim, the court concluded that the evidence that Landlord submitted showed that (1) Munoz was aware that rent was not being paid because Baker's knowledge of unpaid rent was imputed to her and (2) Landlord "did not owe [Munoz] a duty to disclose that rent was not being paid." Finally, the court concluded that, because Munoz's opposition focused solely on an unpled claim, she failed to carry her burden of showing that a triable issue of material fact existed as to her fraud claim. The court granted Landlord's motion and dismissed the fraud claim.

VII.     *Statement of decision from the phase one trial*

The phase one trial took place over three days in September 2021. The court heard testimony from multiple witnesses, including Munoz, Rahimi, and Neault. On February 2, 2022, the court issued a statement of decision setting forth its ruling along with detailed factual findings and legal conclusions.

Regarding the lease, the court concluded that Munoz and Baker, through their respective corporations, were "jointly and severally liable" for all of Cowboy Joe's performance obligations under the lease, "including all rent owed." As a result, Munoz was "liable for all rent due" under the lease, regardless of whether Landlord "ever sought to collect rent from Diamond [B Ranch] or the Bakers, or any other party." The court also concluded that the lease authorized Landlord "to defer its right to collect rent without

11

waiving its right to collect rent" and did not require Landlord to notify Munoz of Cowboy Joe's failure to pay rent.

Regarding the guaranty, the court concluded that the agreement rendered Munoz "personally liable" for Cowboy Joe's failure to pay rent. The court also concluded that, by signing the guaranty, Munoz (1) represented that she had adequate means of obtaining information about Cowboy Joe's operations and financial condition and (2) waived any defense based on lack of notice of Cowboy Joe's failure to pay rent. The court found that there was "overwhelming evidence" that Munoz understood the document that she was signing.

Regarding Munoz's falling out with Baker, the court found that Landlord was unaware of the settlement agreement and that Baker breached both of his obligations under that agreement. The court found that Munoz understood that her decision to "end her relationship" with Baker "did not relieve [King City] of its obligations under the Lease or [her] obligations under the Guaranty." Munoz also understood that she could not be released from the obligations of either agreement unless Landlord agreed in writing. The court further found that, "despite having legal counsel (Mr. Weiss) to guide her and provide legal advice about the Lease and Guaranty," Munoz did not speak to Landlord about her desire for a release. Rather, "upon advice of counsel," she "made a tactical decision not to inform [Landlord] of the issues she had with the Bakers."

The court concluded that because Munoz's defense of unclean hands was equitable, it applied to Munoz's claim for declaratory relief but not to Landlord's breach

12

of contract claims. The court further concluded that even if the defense did apply to the breach of contract claims, it failed on the merits because there was no evidence that Landlord engaged in wrongful conduct. The court rejected Munoz's theory that Landlord deferred the collection of rent as a scheme to increase her liability under the lease and the guaranty. Instead, the court credited Rahimi's testimony that he had seen the construction work that Baker was performing at the property and wanted to give Cowboy Joe's additional time to open. The court also found that "[t]here was considerable evidence" that Munoz knew that Baker was not paying rent on behalf of Cowboy Joe's, because Neault informed her of that fact on multiple occasions.

As to Munoz's res judicata defense, the court agreed with Munoz's contention that the unlawful detainer action "conclusively adjudicated" the fact that Landlord's damages under the lease up to the date of the judgment (i.e., October 23, 2017) were $43,225.25. However, the court concluded that the same reasoning did not apply to the Landlord's damages under the guaranty, because the guaranty was a separate agreement that was not at issue in the unlawful detainer action.

On the basis of those findings and conclusions, the court ruled that King City and Munoz were liable to Landlord for breach of the lease and the guaranty, respectively. In a later order modifying its statement of decision, the court ruled that the judgment in the unlawful detainer action had preclusive effect on the amount of damages that Landlord could seek under the lease up to October 23, 2017. The court ruled that the judgment did not impact the amount of damages that Landlord could seek under the guaranty, nor did it

13

impact the amount of damages that Landlord could seek under the lease from October 23, 2017 to September 2018 (the last month before the new tenant's rent obligations began). Finally, the court ruled that "[a]ll issues and facts adjudicated in Phase 1" were "binding . . . on the parties" for purposes of the resolution of Landlord's breach of contract claims.

## VIII. *Landlord's second motion for summary judgment*

After the court issued its statement of decision, Landlord filed a motion for summary judgment on its claims for breach of the lease and the guaranty, arguing that a jury trial was unnecessary in light of the court's factual findings and legal conclusions from the phase one trial. Landlord argued that the facts and issues adjudicated in the phase one trial showed that each element of each breach of contract claim had been proved. As to the amount of damages, Landlord submitted a spreadsheet setting out its damages under both agreements. For breach of the guaranty, Landlord sought $466,501, which included base rent, operating expenses, late fees, and interest from July 2015 through September 2018. That amount also reflected a credit of $13,747, which accounted for the $10,000 security deposit that Cowboy Joe's paid and the $3,747 in rent that Cowboy Joe's paid in early 2017. For breach of the lease, Landlord sought $178,198.25, which consisted of $43,225.25 in damages for the months of July 2015 through October 2017 plus $134,973 in rent, late fees, and interest for the months of November 2017 through September 2018.

14

In her opposition, Munoz argued that Landlord's damages calculation failed to reflect four credits that she was owed. First, she argued that Landlord had agreed to waive late fees. In support, she submitted a portion of the transcript from Rahimi's deposition in which he testified that he did not recall telling Baker that late fees would not apply while the collection of rent was being deferred but that it was "possible" that he had.

Second, she argued that Landlord had agreed to "modify the Lease to apply the $55,000.00 tenant improvement allowance to" the full rent for the months of July, September, October, and November 2015, and to the operating charges for August 2015. In support, she submitted the modification agreements from June 17 and August 28, 2015. She also submitted the bill of particulars that Landlord had submitted on its (subsequently dismissed) common counts claim. She argued that Landlord "admitted" in the bill of particulars that "it agreed to apply the $55,000.00 tenant improvement allowance to the rent payments in accordance with the two amendments to the Lease."

Third, she argued that Landlord had agreed "to charge half rent for several months." In support, she submitted a portion of the transcript from Rahimi's deposition in which he testified that he agreed to let Baker give him "half the rent, or something similar to that" so that Baker could "start his business." And finally, she argued that on January 17, 2017, Landlord loaned Baker $83,960 to forgive the $83,960 in back rent that was owed as of that date. To support her claim, Munoz submitted a portion of Rahimi's trial testimony from Landlord's prior lawsuit in Los Angeles County Superior Court to

15

collect on an $83,960 secured note that Landlord had executed in Baker's favor (the "note action"). In the excerpt of testimony, Rahimi said that the purpose of the note was not to forgive the unpaid rent but to obtain security for it in the form of collateral (i.e., the improvements and fixtures at Cowboy Joe's).

As to her affirmative defenses of failure to mitigate damages and breach of the implied covenant of good faith and fair dealing, Munoz argued that a trial was necessary because Landlord failed to carry its initial burden of demonstrating that the defenses did not apply. Munoz submitted the declaration of her expert, Robert Griswold, a property manager and licensed real estate broker, who opined that Landlord had failed to mitigate its damages in three ways: (1) by deferring the collection of rent under the lease for approximately two years, (2) by loaning Baker $83,960, and (3) by failing to repair and clean the property after regaining possession. Munoz provided no evidence in support of the breach of the implied covenant defense.

After a hearing on the motion, the court concluded that Landlord carried its burden of proving each element of the claims and that Munoz failed to create a triable issue of fact as to the amount of damages. As to Munoz's argument that Landlord agreed to waive late fees, the court concluded that she failed to demonstrate the existence of a written agreement to that effect. The court also rejected Munoz's contention that there were factual disputes regarding (1) the impact of the $83,960 note between Landlord and Baker, (2) the application of the tenant improvement allowance to the delinquent rent, and (3) whether Landlord agreed to reduce rent by half for some period. The court

16

concluded that those arguments were foreclosed by its prior ruling that the judgment in the unlawful detainer action conclusively determined Landlord's damages under the lease before eviction. The court also sustained Landlord's relevance and hearsay objections to the trial testimony from the note action.

The court concluded that Munoz failed to show that a triable issue of material fact existed as to both of her affirmative defenses. The court sustained Landlord's objections to each of Griswold's opinions on the ground that they lacked foundation and offered improper legal opinions.

On the basis of those conclusions, the court granted summary judgment in Landlord's favor on both breach of contract claims.

IX.    *Entry of judgment*

In January 2023, the trial court entered judgment in favor of Landlord. On the breach of lease claim, the court awarded damages against King City in the amount of $178,198.25. On the breach of guaranty claim, the court awarded damages against Munoz in the amount of $466,501. Munoz filed a timely notice of appeal.[2]

DISCUSSION

I.    *General principles governing summary judgment and appellate review*

The trial court may grant summary judgment if there is no triable issue of material fact and the issues raised by the pleadings can be decided as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f)(2); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807,

---

[2]    Landlord filed a notice of cross-appeal challenging the damage award, but we dismissed the cross-appeal as untimely.

813.) (Unlabeled statutory citations refer to the Code of Civil Procedure.) The initial burden on a moving defendant or cross-defendant is to show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to the cause of action. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).) The initial burden on a moving plaintiff or cross-complainant is to show that there is no defense to a cause of action by "prov[ing] each element of the cause of action." (§ 437c, subd. (p)(2); *Aguilar*, at p. 849.) Once the moving party has carried its initial burden, the burden shifts to the party opposing summary judgment to demonstrate a triable issue of material fact with respect to the cause of action or affirmative defense. (§ 437c, subd. (p)(2); *Aguilar*, at p. 849.)

When ruling on a summary judgment motion, the trial court must consider all of the evidence, as well as the inferences that may reasonably be drawn from the evidence, in the light most favorable to the nonmoving party. (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

We review summary judgment orders de novo and apply the same legal standard as the trial court. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary judgment as a matter of law. (*Ibid.*)

18

"'In reviewing a judgment based upon a statement of decision following a bench trial,' we review questions of law de novo [and] . . . apply a substantial evidence standard of review to the trial court's findings of fact." (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162 (*Ribakoff*).)

On appeal, we presume that the judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The appellant bears the burden of affirmatively demonstrating error and providing an adequate record on appeal. (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.) To carry that burden, the appellant "must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) The appellant must also show that the error was prejudicial. "Even when error is demonstrated, the judgment will not be reversed unless it is 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Ribakoff*, *supra*, 27 Cal.App.5th at p. 162; see Cal. Const., art. VI, § 13.)

II.     *The summary judgment ruling on Munoz's fraud claim*

Munoz asserts two grounds for reversing the trial court's dismissal of her fraud claim. First, she contends that the court was wrong to conclude that Baker's knowledge of unpaid rent was imputed to her under partnership principles. She argues that the court should have applied the exception to the imputation rule, because Baker engaged in "fraud on the partnership" within the meaning of Corporations Code section 16102,

19

subdivision (f). Munoz's argument fails because the dismissal of her fraud claim did not depend on imputation to her of Baker's knowledge of unpaid rent.

"The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 606.) As an independent basis for granting summary judgment, the trial court concluded that Munoz could not prove the "duty to disclose" element, because the lease did not require Landlord to inform the tenant that it was not paying rent. Because Munoz does not challenge that basis for the court's ruling, she fails to demonstrate that any error regarding imputation of knowledge to her was prejudicial. (See *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [appellant bears the burden of showing prejudice, and "[i]njury is not presumed from error"]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126 [affirming grant of summary judgment where the appellant failed to offer argument on an alternate ground for the court's ruling].) Moreover, any error in the court's application of partnership principles to Munoz's fraud claim is harmless given the court's factual finding from the phase one trial that Neault had informed Munoz that Cowboy Joe's was not paying rent. Munoz does not challenge any of the factual findings from the trial.

20

Second, Munoz contends that the trial court erred by concluding that she failed to assert a cause of action for aiding and abetting a breach of fiduciary duty. We disagree. The California Rules of Court require that each cause of action must be "separately stated" by "number" and must include the "nature" of the claim, the party asserting it, and the "party or parties to whom it is directed." (Cal. Rules of Court, rule 2.112.) Munoz failed to comply with that rule. The complaint contains only two separately labeled causes of action—one for fraud and one for declaratory relief.

The complaint makes a single reference to the tort of aiding and abetting a breach of fiduciary duty. In the general allegations section, Munoz alleged that Landlord "aided and abetted [Baker] in increasing the potential liability of [Munoz] and breaching the fiduciary duty owed by [Baker] to [Munoz] by, inter alia, concealing the fact that rent due under the Lease was not being paid." According to Munoz, that allegation was sufficient to assert a cause of action for the tort, because section 425.10 permits plaintiffs to "plead [their] claims in 'ordinary and concise language.'" In fact, section 425.10 states that "[a] complaint or cross-complaint shall contain . . . [a] statement of the facts constituting the cause of action, in ordinary and concise language." (§ 425.10, subd. (a)(1).) That provision does not help Munoz's argument, because it pertains to the factual allegations that make up a cause of action, and it does not eliminate the requirement that each cause of action must be separately pled.

We also reject Munoz's claim that in reaching its conclusion the court failed to "view the evidence in a light favorable to the opposing party," as it was required to do on a motion for summary judgment. Although the issue arose in the context of Landlord's summary judgment motion, the question of whether a plaintiff has sufficiently pled a particular cause of action is a question of the legal sufficiency of a pleading and therefore does not involve the evaluation of evidence.

III.    *The statement of decision*

Munoz raises two challenges to the statement of decision from the phase one trial, both of which apply to the court's ruling on her unclean hands defense. First, Munoz argues that the court erred by concluding that the defense did not apply to the breach of contract claims. To support her contention, she cites case law stating that the defense "is available in legal as well as equitable actions." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.) Second, Munoz also argues that the court violated her due process rights by ruling on the merits of the defense, because the issue for trial was only whether she had waived the defense.

Munoz has forfeited both arguments by failing to raise them as objections to the court's statement of decision. (*McBride v. California Bd. of Accountancy* (2005) 130 Cal.App.4th 518, 527 (*McBride*); *Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 292.) In any event, the arguments fail on their merits because Munoz does not demonstrate how either alleged error was prejudicial.

22

As to Munoz's first argument, it does not matter whether the court was correct that the unclean hands defense did not apply to Landlord's claims, because the court proceeded to issue a ruling that assumed that the defense did apply. As to her second argument, Munoz does not explain how she was harmed by the court's decision to rule on the merits of the defense during the phase one trial. She does not argue, for example, that she would have produced different evidence or argument during trial had she known that the court was going to rule on the merits of her unclean hands defense. She also does not argue that the ruling itself was erroneous. Because of those deficiencies, Munoz fails to demonstrate reversible error.

IV. *The summary judgment ruling on Landlord's breach of contract claims*

Munoz asserts several challenges to the trial court's ruling granting summary judgment in Landlord's favor on its breach of contract claims. All of her arguments lack merit.

A. *Munoz's affirmative defenses*

Munoz argues that the trial court committed two errors by concluding that her affirmative defenses of failure to mitigate damages and breach of the implied covenant of good faith and fair dealing failed as a matter of law.

First, Munoz contends that because Landlord was the moving party, the court "erred in placing the burden on [her] to establish [her] affirmative defense[s]." Munoz is wrong. It is correct that a moving defendant bears the initial burden of showing that one or more elements of the challenged cause of action cannot be established "or that there is

23

a complete defense to that cause of action." (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.) But Landlord was not the moving defendant on its motion for summary judgment of its breach of contract claims. It was the moving cross-complainant. As such, Landlord's initial burden was to show that there was no defense to its breach of contract claims by "prov[ing] each element of the cause of action." (§ 437c, subd. (p)(2); *Aguilar*, at p. 849.) Once Landlord carried that initial burden, the burden shifted to Munoz, as the nonmoving cross-defendant, to "show that a triable issue of one or more material facts" existed as to her affirmative defenses. (§ 437c, subd. (p)(1).) Thus, contrary to Munoz's assertion, Landlord's initial burden as the cross-complainant did "not include disproving any affirmative defenses." (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 564; see also *Aguilar*, at p. 853 ["summary judgment law in this state no longer requires a plaintiff [or cross-complainant] moving for summary judgment to disprove any defense asserted by the defendant [or cross-defendant] as well as prove each element of his own cause of action"].)

Second, Munoz argues that her expert's opinions created a material factual dispute as to whether Landlord failed to mitigate its damages. That argument fails because the trial court sustained Landlord's objections to Griswold's opinions, and Munoz does challenge that evidentiary ruling. An excluded opinion cannot create a material factual dispute. But even if the court had not rejected her expert's opinions, Munoz's argument

would still fail, because Griswold's declaration contains no evidence to support a finding that Landlord failed to mitigate its damages.

The typical way that a landlord mitigates damages for breach of a lease is by reletting the premises. (*Millikan v. American Spectrum Real Estate Services California, Inc.* (2004) 117 Cal.App.4th 1094, 1102.) "If the landlord is not diligent in doing so, the tenant can meet its burden of proving avoidable rental loss by offering evidence, for example, of the existence of a vibrant marketplace of potential tenants willing to bid up the price on a limited supply of equivalent rental space." (*Ibid.*)

At the phase one trial, the court found that Landlord obtained a new long-term commercial tenant within about seven months of evicting Cowboy Joe's. In his declaration, Griswold presented no opinion about whether Landlord's efforts to relet the property were reasonable. Instead, he provided the conclusory opinion that Landlord failed to mitigate its damages by deferring rent under the lease, giving Baker a loan for $83,960, and failing to repair and clean the property after eviction. Because Griswold did not explain how those actions caused avoidable rental loss, his opinions failed to create a material factual dispute concerning mitigation of damages.

B. *Damages*

Munoz argues that a jury trial is necessary to resolve the amount of damages that Landlord is entitled to under the lease and the guaranty. First, she asserts that "factual disputes were created regarding the amount of rent due by [her] affirmative defenses of failure to mitigate, breach of the covenant of good faith and fair dealing, and unclean

25

hands." Second, she asserts that "[t]here were also disputed facts regarding whether late fees were waived, and if not, how much was due, and agreements regarding payment of half rent." Because Munoz fails to support those bare assertions with argument, we reject both arguments as undeveloped. "Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. . . . Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [she] wants us to adopt." (*City of Santa Maria v. Adam*, s*upra*, 211 Cal.App.4th at p. 287.)

Munoz's third argument relies on the bill of particulars that Landlord submitted in support of its dismissed common counts cause of action. She claims that Landlord "acknowledged" in the bill of particulars that it had "agreed to credit a $55,000 tenant improvement allowance to the rent payments." Munoz forfeited the argument by failing to make it in the trial court. (See *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 ["'An argument or theory will . . . not be considered if it is raised for the first time on appeal,'" and "'theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal'"].) Instead, Munoz argued in her opposition to landlord's motion for summary judgment that Landlord had agreed, by way of the modification letters from June and August 2015, to *deduct* from the $55,000 tenant improvement allowance the operating expenses for August 2015 and the rent due for the months of July, September, October, and November

26

2015.  She argued that the bill of particulars reflected that agreement to deduct rent from the $55,000 allowance "in accordance with the two amendments to the Lease."  She did not argue that Landlord agreed to *credit* the entire $55,000 allowance to Cowboy Joe's rent obligation.

As to the argument Munoz did make, it is foreclosed by the trial court's ruling— prompted by Munoz's own affirmative defense—that the unlawful detainer action conclusively determined the amount of rent due before eviction.  But even if Munoz had not forfeited her argument claiming a full credit, we would conclude the argument fails on its merits for two reasons.  First, contrary to Munoz's assertion, the bill of particulars does not contain an acknowledgement that the entire $55,000 tenant improvement allowance would be applied to rent.  Second, the bill of particulars is unrelated to Landlord's breach of contract claims.  The requirement to produce a bill of particulars (or statement of an alleged debt) applies only to an action upon "an account."  (§ 454; *Distefano v. Hall* (1963) 218 Cal.App.2d 657, 677.)  If the claim is based on an enforceable contract, then the bill of particulars is irrelevant because "the measure of damages is the contract price."  (*Benson Elec. Co. v. Hale Bros. Assoc., Inc.* (1966) 246 Cal.App.2d 686, 697.)  Because it has no application to Landlord's breach of contract claims, the bill of particulars cannot create a material factual dispute as to Landlord's damages under the lease or the guaranty.

27

Fourth, Munoz argues that there was a material factual dispute over whether Landlord agreed to forgive the $83,960 in rent that was owed as of January 2017 by executing a note for that amount in Baker's favor on January 17, 2017. That argument misstates the record, because the note was never admitted into evidence. Before trial, the court granted Landlord's motion in limine to exclude the note as irrelevant.[3] More importantly, however, even if the note had been admitted, the argument would still be foreclosed by the court's res judicata ruling, because the note was executed before the unlawful detainer action and Munoz claims the note forgave the rent due as of January 2017.[4]

For all of these reasons, we conclude that Munoz's challenges to the trial court's rulings lack merit.

---

[3] At oral argument, Munoz's counsel argued that the note was in fact admitted into evidence during Rahimi's cross-examination, as rebuttal evidence. But counsel is incorrect. In granting Landlord's motion in limine, the trial court ruled that Munoz's counsel could use Rahimi's prior testimony from the note action to impeach his trial testimony. During Rahimi's cross examination, Munoz's counsel did introduce portions of his prior testimony, but, contrary to counsel's assertions, the note was never admitted into evidence.

[4] At oral argument, Munoz's counsel also argued that the trial court erred by concluding that the unlawful detainer judgment did not have preclusive effect on the damages that Landlord could seek under the guaranty. Munoz forfeited that argument by failing to object to the statement of decision from the phase one trial. (*McBride*, *supra*, 130 Cal.App.4th at p. 527.) The argument nevertheless fails on the merits because the guaranty is a separate agreement from the lease and states that Munoz's obligation pursuant to the guaranty to pay all rent owed under the lease is "independent of" Cowboy Joe's obligations under the lease.

28

DISPOSITION

The judgment is affirmed.  Landlord shall recover its costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:


McKINSTER

       Acting P. J.


CODRINGTON

       J.